**George E. PENLAND, Jr., et al., Plaintiffs,**

**Vernon Ward, Plaintiff-Appellant,**

v.

**WARREN COUNTY JAIL, et al., Defendants-Appellees.**

No. 84–8514.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 14, 1985.

Decided April 10, 1985.

David Kozlowski (argued), Legal Services of South Central Tenn., Inc., Tullahoma, Tenn., for plaintiff-appellant.

Robert W. Boyd, Jr., McMinnville, Tenn., for defendants-appellees.

Before LIVELY, Chief Judge, and EDWARDS,[*] ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY, WELLFORD and MILBURN, Circuit Judges.

CONTIE, Circuit Judge.

Plaintiff Vernon Ward, a prisoner at the Warren County Jail in Tennessee,[1] petitions this court under 28 U.S.C. § 636(c)(5) for leave to appeal from a district court judgment, entered under 28 U.S.C. § 636(c)(4), affirming the judgment of a United States magistrate. For the reasons set forth below, the petition on all three issues raised by Ward is granted.[2]

## I.

As are a majority of the inmates at the Warren County Jail, Ward is a convicted felon serving his sentence in the facility under Tenn.Code Ann. § 40–23–104(a). The jail houses between forty and sixty inmates at any given time. In the proceedings below, Ward sought declaratory and injunctive relief against several alleged conditions of confinement at the jail: lack of exercise, inadequate health care, inadequate conditions during visitation, improper

---

[*] Honorable George Edwards took senior status January 15, 1985.

[1.] The original complaint in this action also named George Penland and Jimmy Earls as plaintiffs. The magistrate found, however, that Penland and Earls had been released from custody before trial (app. at 27). Since there is no indication in the record that Penland and Earls have again been incarcerated in the Warren County Jail, their claims are moot.

[2.] Although the defendants were afforded an opportunity to file a brief addressing the issues presented by Ward's petition, they have elected not to do so.

inspection of inmate mail, imposition of discipline without due process, use of an inhumane solitary confinement cell, inadequate precautions against fire, denial of access to the courts and inadequate nutrition. The district court denied class certification on November 1, 1982.

On February 3, 1983, the parties consented to having the case tried before a magistrate and to having the appeal as of right lie to the district court. *See* 28 U.S.C. § 636(c)(1), (4). Relying upon the district court's prior order, the magistrate again denied class certification on March 10, 1983. Following a three-day trial, the magistrate issued findings of fact and conclusions of law on June 21, 1983. The magistrate granted partial relief on the exercise, health care, conditions of solitary confinement and fire safety claims. Relief on the remaining claims was denied. Although the complaint had requested attorney's fees, they were denied.

Within ten days after the judgment, the plaintiff filed a motion to amend the judgment in order to obtain attorney's fees. On July 29, 1983, the magistrate agreed to award attorney's fees and ordered appropriate documentation. After the requested information was provided, the magistrate awarded attorney's fees on October 21, 1983. The plaintiff filed his notice of appeal in the district court on October 31, 1983.

On the appeal as of right, Ward raised the visitation, access to the courts and due process issues. The district court affirmed the judgment of the magistrate on February 2, 1984. Ward filed the instant petition on March 2, 1984. Although Ward again raises the visitation and access to the courts issues, he has abandoned the due process claim. Moreover, the petition asserts that the magistrate and the district court erred in refusing to certify a class action.

## II.

Before moving to the substantive questions presented by this case, we address the jurisdictional issue of whether Ward timely initiated the appellate process. Although the magistrate entered judgment on June 21, 1983, Ward did not appeal to the district court until October 31, 1983. Ward did appeal, however, ten days after the magistrate disposed of the motion for attorney's fees. The question, therefore, is whether the post-judgment motion for attorney's fees tolled the time period for filing a notice of appeal. *See* Federal Rule of Appellate Procedure (F.R.A.P.) 4(a)(4)(iii) (referring to Federal Rule of Civil Procedure (F.R.C.P.) 59 motions to alter or amend the judgment).

 We hold that the time period was tolled. Although a post-judgment motion containing an initial request for attorney's fees will not toll the appeals period, *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); *Smillie v. Park Chemical Co.*, 710 F.2d 271 (6th Cir. 1983), the plaintiff initially requested attorney's fees in the complaint rather than in his post-judgment motion. Moreover, the magistrate ruled against Ward on the attorney's fee issue in the written opinion rather than deferring the question. This court has previously distinguished between requests for attorney's fees made in the complaint, and similar requests made only after judgment. *See Smillie*, 710 F.2d at 274. Since Ward's post-judgment motion was properly filed under F.R.C.P. 59(e), it tolled the period for filing the notice of appeal.

Furthermore, we hold that Ward timely filed the instant petition for leave to appeal. Although F.R.A.P. 4(a) by its terms applies only to appeals as of right from district court judgments, we apply the time period specified therein under our supervisory power. *See* Rule 28(b) of the Rules of the Eighth Circuit. Since Ward filed the petition for leave to appeal on the twenty-ninth day after the district court entered judgment, the petition is timely.

## III.

As has been indicated, Ward filed his petition for leave to appeal under 28 U.S.C.

§ 636(c)(5). That section provides, in pertinent part, that the judgment of a district court which adjudicated an appeal from the judgment of a magistrate:

> may be reviewed by the appropriate United States court of appeals upon petition for leave to appeal by a party stating specific objections to the judgment.

This language does not specify the criteria that a court of appeals must use in deciding whether or not to grant a petition for leave to appeal. Before considering Ward's petition, therefore, we enunciate standards to be used by this court in deciding all such petitions.

Section 636(c)(5) was enacted as part of the Federal Magistrate Act of 1979. Although the language of this section originated in a 1979 Senate bill, House and Senate bills on the subject were introduced in 1977. The 1977 Senate bill, as reported by the Judiciary Committee, provided that review by a court of appeals would be "limited to questions of law." S.Rep. No. 344, 95th Cong., 1st Sess. 19–20 (1977) (hereinafter S.Rep. No. 95–344). The Report stated that granting a petition for leave to appeal would be discretionary, *id.* at 5, and that this discretion should be exercised in the same manner as in addressing petitions for leave to appeal under 11 U.S.C. § 47 (now repealed). *Id.* at 11. Taking appeals as of right to the district court was particularly favored in cases involving small dollar amounts and relatively easy questions of law. *Id.* at 5. Conversely, direct appeal to a court of appeals was intended for cases involving novel, complex or important questions of law. *Id.*

The 1977 House bill, as reported by the Judiciary Committee, provided that a court of appeals should decide whether to grant a petition for leave to appeal under writ of certiorari standards. H.R.Rep. No. 1364, 95th Cong., 1st Sess. 2, 14 (1978) (hereinafter H.R.Rep. No. 95–1364). This meant that a court of appeals would have "broad discretion" to determine which cases would

receive additional review. *Id.* at 14. Although both the 1977 Senate and House bills passed, the legislation died in the Conference Committee because of a controversial rider to the House bill regarding the abolition of federal diversity jurisdiction. *See,* McCabe, *The Federal Magistrate Act of 1979,* 16 Harv.J. on Legis. 341, 344, 364 (1979).

The 1979 Senate bill contained the language that eventually became § 636(c)(5). S.Rep. No. 74, 96th Cong., 1st Sess. 28 (1979), U.S.Code Cong. & Admin.News 1979, p. 1469 (hereinafter S.Rep. No. 96–74). The Report reiterated that a court of appeals should exercise discretion, *id.* at 5, in granting or denying petitions for leave to appeal in the "same manner that they now act on petitions to allow appeals in some bankruptcy cases under 11 U.S.C. § 47." *Id.* at 13, U.S.Code Cong. & Admin. News 1979, p. 1482. The Report further reiterated the advantages of taking appeals as of right to the district courts in cases involving small dollar amounts or relatively easy questions of law. *Id.* at 5.

As had the 1977 House bill, the 1979 House bill set forth a writ of certiorari standard. H.R.Rep. No. 287, 96th Cong., 1st Sess. 12, 26 (1979) (hereinafter H.R. Rep. No. 96–287). The accompanying Report again emphasized a court of appeal's "broad discretion" to grant or deny petitions for leave to appeal. *Id.* at 12. In the Conference Committee, the Senate's language was adopted. The Committee's Report did not address the question of what criteria a court of appeals should use in considering petitions for leave to appeal. *See* S.Conf.Rep. No. 322, 96th Cong., 1st Sess. 8 (1979).

Both the language of § 636(c)(5) and the legislative history clearly indicate that the decision to grant or deny a petition for leave to appeal is discretionary in nature.[3] *See* S.Rep. No. 96–74 at 5, 13; S.Rep. No. 95–344 at 5. Congressional rejection of the writ of certiorari standard contained in the

---

**3.** The section states that a district court judgment entered under § 636(c)(4) "may" be reviewed by a court of appeals rather than "shall"

be reviewed. By electing to have an appeal as of right lie to the district court, parties waive an appeal as of right to this court.

1977 and 1979 House bills demonstrates, however, that a court of appeal's discretion is more circumscribed than the exceedingly broad discretion exercised by the Supreme Court. We must decide, therefore, to what degree a court of appeal's discretion is limited in considering petitions for leave to appeal.

We begin, as S.Rep. No. 96–74 and S.Rep. No. 95–344 direct, with precedent governing the treatment of petitions for leave to appeal under the former 11 U.S.C. § 47(a). Most of the cases construing § 47(a) held that a discretionary appeal would be granted only if "special equities" or "exceptional circumstances" were present. *See In re Cummings,* 413 F.2d 1281, 1284 (10th Cir.1969), *cert. denied sub nom. Sears, Roebuck & Co. v. Horton,* 397 U.S. 915, 90 S.Ct. 918, 25 L.Ed.2d 95 (1970); *Household Finance Corp. v. Jones,* 322 F.2d 228, 231 (5th Cir.1963); *New York Credit Men's Adjustment Bureau, Inc. v. David Strauss & Co.,* 296 F.2d 702 (2d Cir.1961); *Commonwealth Division of Employment Security v. United States,* 261 F.2d 449, 451 (1st Cir.1958); *State of California, Department of Employment v. Fred S. Renauld & Co.,* 179 F.2d 605, 608 (9th Cir.1950). These cases are distinguishable on their facts, however, because the appellants had neglected to file petitions for leave to appeal. Some had filed regular notices of appeal. Accordingly, the appellants in these cases were required to satisfy a higher standard before their appeals would be heard. In contrast, plaintiff Ward timely filed his petition for leave to appeal. Consequently, the "special equities/extraordinary circumstances" test set forth in the § 47(a) cases may not appropriately be applied to his petition.

■ Two of the § 47(a) cases do provide some direction, however. In alternative holdings, the courts in those cases briefly stated that even if the appellants had filed petitions for leave to appeal, the questions presented were not of "sufficient importance" to merit further attention. *Jones,* 322 F.2d at 231; *David Strauss,* 296 F.2d 702. The language of the two opinions suggests that discretionary appeals should be granted only if substantial and important questions of law are involved. A similar attitude is expressed in the legislative history of § 636(c)(5). The Senate Reports both expressed the nonbinding preference that cases tried before a magistrate and involving relatively easy questions of law should be appealed to the district courts. S.Rep. No. 96–74 at 5; S.Rep. No. 95–344 at 5. Moreover, full appeals to the courts of appeals generally would not be necessary in such cases. S.Rep. No. 96–74 at 13. The clear implication is that petitions for leave to appeal need be granted only in cases involving substantial and important questions of law.

■ The Eight Circuit has reached a similar conclusion by court rule specifying the criteria to be used in considering petitions for leave to appeal. *See* Rule 28(a), Rules of the Eighth Circuit. Rule 28(a)(1) provides that leave to appeal may be denied if: (1) the issue is whether "the magistrate's findings of fact are clearly erroneous and the district court upheld the magistrate's findings," (2) the dispositive issue has been "authoritatively decided recently" and the district court "found the magistrate's judgment to be consistent with the authoritative decisions" or (3) the issues raised are "otherwise insubstantial." *Id.* Conversely, the Rule in part provides that leave to appeal shall be granted if the magistrate "decided a substantial question of law not previously determined" by the court of appeals or if the magistrate decided a question of law in a manner inconsistent with circuit precedent. *See* Rule 28(a)(2)(ii).[4]

---

**4.** A rule requiring that leave to appeal be granted when the lower courts have not followed circuit precedent rests on the assumption that such cases, by definition, present substantial and important issues. We agree with this assumption. A primary function of a court of appeals is to ensure that established law is followed by lower courts within the circuit.

We note the language of Rule 28(a)(2)(ii) which provides that permission to appeal will be granted if "review is necessary to serve the ends of justice." This nebulous language provides virtu-

■ We adopt these standards for use in this circuit with two modifications regarding when a petition for leave to appeal will be granted. First, if a magistrate decides a question of law in a manner inconsistent with the decisions of this court but the district court corrects the error on the appeal as of right, then a further appeal to this court need not be granted. Second, since petitions for leave to appeal are submitted to a motions panel of this court rather than to a hearing panel, the motions panel need not decide that the magistrate and the district court *actually* failed to follow the decisions of this court in order to grant leave to appeal. Instead, the motions panel need only determine that there is a substantial likelihood that the magistrate and the district court violated circuit precedent. The panel assigned to hear the case would then decide whether the magistrate and the district court actually failed to follow circuit precedent.

At first glance, the criteria that we have adopted in order to determine when leave to appeal shall be granted may not appear significantly different from those listed in Rule 17.1(c) of the Rules of the Supreme Court. The Supreme Court considers the factors set forth in Rule 17.1(c), among others not relevant here, in deciding whether to grant writs of certiorari. As has been indicated, however, a court of appeal's discretion in this area is more circumscribed than the broad discretion exercised by the Supreme Court. The difference between the level of discretion exercised by this court and that exercised by the Supreme Court is illustrated in the introductory paragraph of Supreme Court Rule 17.1. The final sentence of that paragraph states that while the reasons listed in subsequent subsections, including subsection (c), will be considered by the Supreme Court in determining whether to grant a writ of certiorari, the listed criteria do not control the Court's discretion. Thus, the Supreme Court may deny a writ of certiorari even if the standards of Rule 17.1(c) have been

met. In contrast, this court must grant leave to appeal under § 636(c)(5) whenever the standards adopted above have been satisfied. Rule 28(a) of the Rules of the Eighth Circuit is similarly constructed. The conclusion that leave to appeal must be granted in some situations is not inconsistent with the concept of exercising discretion. Discretion rarely is unbounded. We have merely decided what standards will govern the exercise of discretion in § 636(c)(5) cases so that fair and consistent results will be obtained in the future.

■ Having articulated the standards governing whether a petition for leave to appeal should be granted, we delineate what future petitions must contain. A petition for leave to appeal should contain: (1) a copy of the statement in which the parties consented to the exercise of plenary jurisdiction by the magistrate and to having the appeal as of right lie to the district court, see 28 U.S.C. § 636(c)(4); *Ambrose v. Welch*, 729 F.2d 1084 (6th Cir. 1984); (2) a concise statement of the case containing facts material to the questions presented; (3) a statement of specific objections to the judgment and a concise argument relating to each objection; and (4) an appendix containing the lower court docket sheet, copies of the final judgments of the district court and the magistrate, copies of any opinions rendered with these judgments and a copy of any part of the record referred to in the petition. The petition may not raise any issue that was not presented to the district court on the appeal as of right. The petition shall not exceed twenty-five pages in length (exclusive of the appendix), except by permission of the court upon good cause shown. The petition and appendix must be served upon the appellee and four copies must be filed with this court. The appellee may file an answer not to exceed twenty-five pages in length. Should the appellee refer to parts of the record not contained in the appendix to the petition, the appellee must submit copies of these portions of the

ally no guidance to a court in exercising its discretion. We hold that the ends of justice will be served if petitions for leave to appeal are

evaluated under the standards set forth in the body of this opinion.

record together with the answer. The service and filing requirements applicable to the petition shall also apply to the answer.

## IV.

 Turning to the petition submitted by Ward, we hold that leave to appeal should be granted as to all three issues presented.[5] The record shows that the plaintiff sought to have a class action certified under F.R.C.P. 23(b)(2).[6] Although the district court held on November 1, 1982 that the requirements of F.R.C.P. 23(a) had been satisfied, class certification was denied because the plaintiff had not demonstrated that a class action was "a superior method for providing the relief asked for in this type of lawsuit" and because notice to all class members, which would be impossible to provide in actuality, would be required. The magistrate, in reliance upon the district court's prior order, denied class certification on March 10, 1983. The "superior method" criterion has been held relevant, however, only to class actions sought to be certified under F.R.C.P. 23(b)(3). *Norris v. Frame*, 585 F.2d 1183, 1189–90 n. 18 (3d Cir.1978). Moreover, this court has specifically held that notice to class members is not required in all F.R.C.P. 23(b)(2) class actions, although notice may be given in a particular case under F.R.C.P. 23(d)(2) if any of the interests listed therein merit protection. *Alexander v. Aero Lodge No. 735*, 565 F.2d 1364, 1373–74 (6th Cir.1977), *cert. denied*, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978). Thus, there exists a substantial likelihood that the class certification issue was decided on a ground inconsistent with a decision of this court. Whether the district court and the magistrate actually failed to follow precedent is a question that we leave to the panel assigned to hear this case.

Ward also contends that he was denied access to the courts because the jail provides neither law books nor legally trained personnel to assist prisoners in asserting their legal rights. This court has held that state prisoners must be afforded "adequate, effective and meaningful" access to the courts. *Patterson v. Mintzes*, 717 F.2d 284, 288 (6th Cir.1983). To ensure such access, state prisoners must be provided either with "adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977).[7] Although Ward resides in a county jail rather than in a state prison facility, at least one circuit has applied the *bounds* standards to local jails. *See Williams v. Leeke*, 584 F.2d 1336, 1340 (4th Cir.1978). We hold that whether convicted felons serving their sentences in local jails have the same right of access to either law books or legally trained personnel as do convicted felons serving their sentences in state prison facilities is a substantial and important question of law that has not directly been addressed by this court.

The reasoning of the magistrate's opinion does not alter this conclusion. The magistrate held that access to the courts had not been denied because the state has

---

**5.** We emphasize that this court may grant leave to appeal as to some issues raised in a petition and deny leave to appeal as to other issues. When leave to appeal is granted in whole or in part, the petitioner need not return to the district court in order to file a notice of appeal. The granted petition shall be deemed a notice of appeal.

**6.** Although the class certification issue was presented to the district court before the parties consented to trial before the magistrate, and although the issue was again presented to the magistrate, the plaintiff did not argue the point on appeal to the district court. We hold, however, that since the district court had already ruled unfavorably on the class certification is-

sue, it would have been futile for the plaintiff to raise the claim again on appeal to that court. Moreover, since the class certification issue was fully addressed by the parties and the district court, the defendants cannot reasonably be surprised by our reaching the issue. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

**7.** This court made clear in *Holt v. Pitts*, 702 F.2d 639, 640–41 (6th Cir.1983), that the state has the option of providing either law books or legally trained personnel or some combination of the two meeting constitutional standards. Prisoners may not dictate to the state the method by which access to the courts will be assured.

no duty to provide counsel for prisoners and because Legal Services of South Central Tennessee, Inc., represents the plaintiff in this action. Although we agree that the state need not appoint counsel for any prisoner so desiring, the state must provide either law books or legally trained personnel to state prisoners. *Bounds*, 430 U.S. at 828, 97 S.Ct. at 1498. The issue here is whether such resources must also be afforded to state prisoners being housed in local jails.

Nor is it dispositive that the plaintiff is being represented by Legal Services of South Central Tennessee, Inc. That organization was appointed to represent the plaintiff after the *pro se* complaint was filed. *Bounds* held, however, that assistance from law books or legally trained personnel is essential at the pleading stage. 430 U.S. at 825, 828, 97 S.Ct. at 1496–97, 1498. Indeed, a prisoner who feels aggrieved may well need assistance in determining whether he has a colorable claim before the pleading stage is reached. *Id.* at 825, 97 S.Ct. at 1496–97. Consequently, the fact that Legal Services of South Central Tennessee, Inc. eventually entered an appearance in this case does not show that the *Bounds* requirements have been satisfied and certainly does not control the question of whether a felon who is serving his sentence in a county jail has the same right of access to either law books or legally trained personnel as a felon who is serving his sentence in a state prison facility. We express no view on this question.

The plaintiff's final claim is that visitation conditions are inadequate. Prisoners at the jail must speak through holes cut in small panes of glass which are set in a metal wall separating prisoner from visitor. There is little or no privacy; in fact, the visiting area often is so noisy that "it is difficult for the visitors and inmates to hear each other." Magistrate opinion at 3. Before addressing this claim, it is useful to state what issues are not involved. The petition does not assert that the frequency or length of visitation afforded to the plaintiff is inadequate. Nor does the petition seek contact visitation for the plaintiff. *Cf. Block v. Rutherford*, —— U.S. ——, 104

S.Ct. 3227, 82 L.Ed.2d 438 (1984) (prohibition on contact visitation between visitors and pre-trial detainees is permissible); *O'Bryan v. County of Saginaw*, 741 F.2d 283 (6th Cir. 1984) (same). The petition only argues that the excessive noise and lack of privacy effectively restrict, without any penological justification, the associational rights that the jail administrators have already recognized. Appropriate penological objectives would include rehabilitation, maintenance of jail security and deterrence. *See Pell v. Procunier*, 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804–05, 41 L.Ed.2d 495 (1974); *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir.1984).

Two federal district court cases may be analogous on their facts. In *Dawson v. Kendrick*, 527 F.Supp. 1252, 1276, 1309 (S.D.W.Va.1981), the court found a constitutional violation where prisoners and visitors had to shout to be heard and strain to see through barely translucent glass panes of minimal dimension that were set only three feet apart. In *McMurry v. Phelps*, 533 F.Supp. 742, 755–56, 764 (W.D.La. 1982), the court found a constitutional violation where prisoners and visitors had to speak through holes located underneath small windows. There was little privacy and much noise. Prisoner and visitor were unable to maintain eye contact while speaking.

We hold that whether the visitation conditions involved here rise to the level of a constitutional violation is a substantial and important question of law that has not been addressed by this court. We do not decide, of course, whether the *Dawson* and *McMurry* cases are analogous, whether they are persuasive (assuming that they are analogous) and whether a constitutional violation is present under these facts.

The petition for leave to appeal is GRANTED as to all three issues asserted. The clerk of court shall arrange an appropriate briefing and argument schedule.