Kevin J. LOVE, Plaintiff-Appellant,

v.

SUMMIT COUNTY, a government entity, Ron R. Robinson, Sheriff of Summit County, Ralph William Wallin, Jr., Summit County Commissioner, Gerald E. Young, Summit County Commissioner, and Carl T. Ovard, Summit County Commissioner, Defendants-Appellees.

No. 83–1010.

United States Court of Appeals, Tenth Circuit.

Nov. 8, 1985.

Brian M. Barnard, Salt Lake City, Utah (Jim Bradshaw, Salt Lake City, Utah, was also on the brief), for plaintiff-appellant.

Jody K. Burnett, Snow, Christensen & Martineau, Salt Lake City, Utah, for defendants-appellees.

Before HOLLOWAY, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.

HOLLOWAY, Chief Judge.

Plaintiff-appellant Love brought this action under 42 U.S.C. § 1983 seeking declaratory relief, an injunction and damages against the County of Summit, Utah, Ron Robinson, the Summit County Sheriff, and the Summit County Commissioners for alleged violation of his constitutional right of access to the courts. Plaintiff claims defendants violated this right when they refused to grant him access to a law library so that he could research various claims he said he wanted to bring contesting the conditions at the Summit County jail, or alternative assistance.

After a magistrate made a preliminary report and recommendation against dismissal, the district court heard defendants' motion to dismiss plaintiff's complaint.[1] The court considered matters both parties had submitted outside the pleadings, and granted judgment for defendants. Plaintiff appeals that disposition. We affirm.

## I.

Viewing the facts most favorably to the plaintiff, as we must at this juncture, *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), defendants incarcerated plaintiff, an indigent, in the Summit County Jail at Coalville, Utah from approximately January 12, 1982 until August 16, 1982 because plaintiff could not post bail while awaiting trial on various criminal charges. I R. 48, 79. The Utah state court appointed an attorney to represent him in the criminal trial scheduled for March 4, 1982. At a hearing on March 1 plaintiff told the court he no longer wanted the court-appointed attorney to represent him and that he could obtain private counsel. On March 4, a private Salt Lake City criminal attorney appeared for plaintiff. Because of the change in counsel, the state court moved the trial date to June 8. On June 4 the court again continued the trial so that plaintiff's new attorney could obtain a psychological evaluation of the plaintiff and look for witnesses. On August 12 plaintiff pleaded guilty to charges of burglary and theft and on August 16, 1982, the court sentenced him and he was transferred to the Utah State Prison. I R. 56.

Plaintiff had a number of complaints concerning his treatment and the conditions of his confinement while he was incarcerated in the Summit County Jail. He sought access to a law library orally in late March or early April 1982, and in writing on April 22, 1982 to pursue these claims, but defendants denied his request. Sheriff Robinson told plaintiff that the Summit County Jail does not allow inmates access to a law library because the jail does not have enough staff to supervise inmates while they are in the library and because "what they [the inmates] wanted to do was turn around and sue him and sue Summit County jail staff and Summit County officers ..." I R. 77.[2]

The record shows that the Summit County Jail, a small facility,[3] does provide some

---

**1.** Plaintiff also filed a motion for summary judgment in this action [I R. 19–28], which the district court denied.

**2.** Sheriff Robinson's affidavit stated that he had no recollection of "any specific conversation directly with Love in which he made a request that he be given access to a law library or other legal materials." (Affidavit ¶ 2. I R. 80.) We have considered the statements alleged by plaintiff in the light most favorable to him to determine whether the summary judgment was proper.

**3.** The record shows that the jail has a maximum capacity for 26 inmates. During 1981 and 1982 the jail reached that capacity on only two occasions, for only a few days in each instance. On

opportunity for inmates to have access to legal representation and the courts, but the jail itself does not have a law library. Although the County has a small law library in the same building and on the same floor as the jail, plaintiff contends the law library is inadequate. Moreover, the library is used by the judges and the County Attorney's staff and the jail has no rules permitting the jail inmates to have access to that or any other law library. However, the jail does allow inmates access to attorneys and the courts upon request. The jail makes a telephone available to the inmates and notaries public are available for those who need them.

If an inmate is indigent, the county will appoint counsel for him in criminal matters and will provide free postage, envelopes and stationery so that an indigent may communicate with the courts. The record contains no evidence that Summit County provides free attorneys, paralegals or other persons trained in the law to indigent jail inmates who need help preparing habeas corpus petitions or civil rights claims. Plaintiff and two others who asked for access to a law library at the time of plaintiff's request were the first inmates to request such access while incarcerated at the Summit County Jail. I R. 20, 63–67, 70–72.

Plaintiff had no legal representation for the claims he wanted to file, although he did have representation in his criminal action. When plaintiff asked his attorney in the criminal case about filing his civil rights claims, that attorney refused to represent plaintiff but referred him to the attorney who eventually agreed to represent him in the instant case. That civil attorney likewise declined to represent him in his anticipated civil rights litigation over jail conditions, but did provide him prepared forms from the federal court clerk's office for *pro se* complaints under § 1983. This civil counsel gave plaintiff some "limited instructions" on completion of the forms and encouraged plaintiff to file his civil rights claims on his own concerning the conditions of confinement. III R. 18–19. He also told plaintiff that other attorneys might be available and willing to take his case on a contingency basis and that he could assist him to find someone; plaintiff did not ask him to do so. III R. 9–10. Sheriff Robinson claims that he did not know plaintiff's representation was limited and that had he known, his office and the jail staff "would have handled the situation differently." I R. 80.

At the hearing before the district court, plaintiff's counsel stated plaintiff had suffered no prejudice when that attorney had declined to represent plaintiff on his civil rights claims; and that plaintiff still had the right to pursue his claims of lack of recreation and medical attention at the jail. III R. 6–7; Appellant's Brief, 19. Nevertheless, plaintiff seeks damages and declaratory relief for harm allegedly resulting from defendants' failure to allow him access to a law library while he was incarcerated in the jail from January 12 until August 16, 1982.[4]

A hearing and oral argument took place before the magistrate, who entered a Preliminary Report and Recommendation on August 20, 1982. The magistrate found that the court should deny the motion for a preliminary injunction as moot, the plaintiff having been transferred to the Utah State Prison following sentencing. The magistrate found that at the time of the hearing the plaintiff was and since January 12, 1982, had been a pretrial detainee at the Summit County Jail. Plaintiff was given appointed legal counsel to represent him in the criminal proceedings against him, and his civil counsel was representing him in the instant civil rights action. During his seven months' incarceration at the jail, the plaintiff had made multiple complaints to jail officials about allegedly unconstitutional conditions of confinement, and he de-

---

several occasions in 1981 the jail was empty. During 1981 and 1982 the jail held an average of 8 inmates. I R. 69.

**4.** Plaintiff acknowledges that his transfer to the Utah State Prison rendered his claim for injunctive relief moot. Brief of Appellant, 17.

sired to file one or more actions challenging these conditions. Plaintiff had sought use of a law library for that purpose, but his requests were denied. The magistrate found further that the basis of the defendants' motion to dismiss was that plaintiff had counsel representing him in the criminal proceedings and counsel assisting in the civil rights action and therefore had no need for law library facilities. Although plaintiff's civil counsel was assisting plaintiff in the civil rights action, that attorney had declined to assist him in preparing complaints challenging other allegedly unconstitutional jail conditions.

The magistrate said that the states must provide inmates with an adequate library or other means to assist them in securing access to the courts on constitutional complaints and that the obligation extends to county jail inmates, although not to short-term jail detainees. The magistrate found the plaintiff was not a short-term detainee and recommended that the motion to dismiss be denied. The magistrate did not recommend that the court grant plaintiff's motion for partial summary judgment at that time, because the magistrate saw no immediate need to grant the motion and the parties had requested further discovery.

On December 12, 1982 the district judge entered an order denying the plaintiff's motion for summary judgment and granting the defendants' motion to dismiss the plaintiff's complaint with prejudice, and the court entered judgment in favor of defendants. At the conclusion of the hearing on the motions, the district judge orally stated that he agreed with the distinction that defendants' counsel had suggested between a pretrial detainee represented by counsel, although for limited purposes, and

a prisoner who seeks independently to assert a cause of action and whom the absence of access to a law library prejudices or precludes from bringing a habeas suit or a challenge to conditions of confinement. III R. 17. The judge stated that he did not know of anyone who more easily could have given assistance than plaintiff's counsel in the instant case, who was gifted in that area and could have seen that plaintiff received the help he needed without concern about the library facilities. The court orally and in its written order granted the motion to dismiss. II R. 22; I R. 83–84.

## II.

### A.

This circuit has long recognized that, like all persons, "inmates have a constitutional right to 'adequate, effective, and meaningful' access to the courts and that the states have 'affirmative obligations' to assure all inmates such access." *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981), *quoting Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). Thus far, our cases applying this principle have only dealt with convicted inmates in state prisons, *see, e.g., Nordgren v. Milliken*, 762 F.2d 851 (10th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985); *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Battle v. Anderson*, 614 F.2d 251 (10th Cir.1980); *Twyman v. Crisp*, 584 F.2d 352 (10th Cir.1978); *United States v. Evans*, 542 F.2d 805 (10th Cir.1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977), and detainees in state mental institutions. *See, Ward v. Kort*, 762 F.2d 856 (10th Cir.1985).[5]

5. At least one circuit has applied the *Bounds* standards to local jails. *See Williams v. Leeke*, 584 F.2d 1336, 1340 (4th Cir.1978), *cert. denied*, 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276, *accord Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir.), *aff'd in part, rev'd in part on other grounds, sub nom. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1978) ("[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to

assist in his own defense") (affirming district court order requiring greater access to counsel and access to law libraries).

However other courts recognize that the differences between convicted inmates in state long-term detention facilities and pretrial detainees in county jail may call for flexibility in the second case. *Campbell v. McGruder*, 580 F.2d 521, 555 n. 3 (D.C.Cir.1978) ("While there are substantial differences between the legal

■ This plaintiff, a pretrial detainee, also has a constitutional right to adequate, effective and meaningful access to the courts to vindicate his fundamental constitutional rights. *See, Matzker v. Herr,* 748 F.2d 1142, 1150 (7th Cir.1984); *United States ex rel. George v. Lane,* 718 F.2d 226, 230 (7th Cir.1983). In this case, we need not decide the extent of the affirmative obligations resting on local jail officials to assure inmates access to the courts. Here, the claim for injunctive relief being moot, we must determine only whether plaintiff was entitled to damages or declaratory relief for injury to him in violation of his right of access to the courts. We hold that he was not.

**B.**

The Supreme Court has long recognized that states may not unreasonably infringe on or burden a prisoner's right of access to the courts to vindicate fundamental constitutional rights. Thus, in *Ex Parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034, *reh. denied,* 312 U.S. 716 (1941), the Court stated that "the state and its officers may not abridge or impair [a prisoner's] right to

apply to a federal court for a writ of habeas corpus ..." *Id.* at 549, 61 S.Ct. at 641. In *Hull,* the Court invalidated a prison rule requiring that prisoners submit their habeas petitions to parole board authorities for screening.

Subsequent cases have developed the corollary principle that the states may not deprive prisoners of access to the courts by denying them access to available sources of legal expertise where no adequate alternative sources exist to assist them in preparing their claims for violation of fundamental constitutional rights. Thus in *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the Court invalidated a prison rule which prohibited prisoners from assisting one-another in preparing habeas corpus petitions for filing. Pointing out that the states "could not constitutionally adopt and enforce a rule forbidding illiterate or poorly educated prisoners to file habeas corpus petitions," the Court concluded that a ban on prisoners assisting one-another, "in the absence of any other source of assistance for such prisoners, effectively does just that." *Id.* at 487, 89 S.Ct. at 749.

status of prisoners in a jail and those in a correctional institution that might lead to less of a demand for law libraries in jails, the demand for law libraries by pretrial detainees being based on their right of 'access to the courts' is answered insofar as the D.C. Jail is concerned by the availability in all cases of adequate assistance from persons trained in the law"); *Harris v. Young,* 718 F.2d 620, 623 (4th Cir.1983) ("There are significant differences between state and local facilities, including the average length of stay and the type of crime for which inmates are incarcerated which, taken together, reasonably support the argument that local jails, operating under limited budgets, were not required to meet the same obligations to inmates as the state facilities"); *Jones v. Diamond,* 594 F.2d 997, 1024 (5th Cir.1979), *rev'd in part on other grounds on rehearing,* 636 F.2d 1364 (5th Cir.) (en banc) *cert. dismissed sub nom. Ledbetter v. Jones,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981) (ordering that convicted prisoners be given access to law libraries but holding that no such relief was necessary for pretrial detainees because "pretrial detainees were not unconstitutionally prevented from seeking redress of their grievances in court, and they all have, if they wish it, appointed or retained counsel"); *United States v. Garza,* 664 F.2d 135, 142 (7th Cir.1981)

*cert. denied,* 455 U.S. 993, 102 S.Ct. 1620, 71 L.Ed.2d 854 (1982) ("whatever research handicaps the Marion [federal penitentiary] library imposed [on inmates who had appointed counsel available but proceeded pro se in civil rights claims] could easily have been overcome by simply directing appointed counsel to obtain the needed materials from a more complete law library"); *Johnson by Johnson v. Breije,* 701 F.2d 1201, 1208 (7th Cir.1983) (persons unfit to stand trial are not entitled to a law library where they "are entitled to be represented by attorneys, and ... adequate assistance of counsel will be available").

Some circuits have yet to confront the issue. *See, e.g., Penland v. Warren County Jail,* 759 F.2d 524, 531 (6th Cir.1985) (holding that whether convicted felons incarcerated in county jails are entitled to same rights under *Bounds* as convicted felons in state prison "is a substantial and important question of law that has not been directly addressed by this court"); *United States v. Blue Thunder,* 604 F.2d 550, 556–57 (8th Cir.) *cert. denied,* 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979) ("We need not determine to what extent the rights recognized in *Bounds* apply to persons temporarily incarcerated while awaiting sentencing ...").

In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Court invalidated a prison regulation which prohibited the use of law students or paralegals to interview prison inmates, stating:

> "The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. This means that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Id.* at 419.

In *Martinez,* the prison's prohibition on use of paralegals and law students to interview prison clients unjustifiably increased the cost of legal representation to inmates. In the absence of any justification for the rule or any alternative sources of legal assistance, the Court upheld the district court's determination that the rule impermissibly burdened prisoners' right of access to the courts. *Id.* at 420–22, 94 S.Ct. at 1814–15.

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court extended the specific holding in *Avery* to apply to claims under the Civil Rights Act of 1871, pointing out that "[t]he right of access to the courts, upon which *Avery* was premised, ... assumes that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Id.* at 579, 94 S.Ct. at 2986. In *Wolff,* petitioners challenged a prison regulation which required prisoners to seek legal assistance from a prison-appointed inmate advisor, claiming it deprived them of the right to seek assistance from others in filing claims. Since it could not assess the quality of legal service the prison-appointed advisor provided, the Court remanded the case to the district court for assessment of "the adequacy of legal assistance under the reasonable-alternative standard of *Avery.*" *Id.* at 580, 94 S.Ct. at 2986.

The Supreme Court did not impose any *affirmative* obligations on the states to provide prisoners with access to law libraries or legal assistance until it decided *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). There the Court summarily affirmed the district court's determination that the State of California had to give indigent prisoners "adequate means of obtaining the legal expertise necessary to obtain judicial consideration of alleged grievances cognizable by the courts." *Gilmore v. Lynch,* 319 F.Supp. 105, 112 (N.D.Cal.1970).

In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Court expounded on the obligation recognized in *Younger* and held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498 (footnote omitted). The Court stated that the fundamental question was "whether law libraries or other forms of legal access *are needed* to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 825, 97 S.Ct. at 1496 (emphasis added).

### C.

The primary thrust of plaintiff's arguments is that he was entitled to access to a law library while confined in the county jail, although he also argues he was without alternate access to legal counsel to assert his claims. Brief of Appellant, 7, 9, 24–25. *Bounds* itself rejects the concept that availability of a law library is an essential component of access to the courts:

> "[W]hile adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here ... does not foreclose alternative means to achieve that goal.... Among the alternatives are the training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students,

either as volunteers or in formal clinical programs, the organization of volunteer attorneys through bar associations or other groups, the hiring of lawyers on a part-time consultant basis, and the use of full time staff attorneys, working either in new prison legal assistance organizations or as part of the public defender or legal services offices." *Id.* at 830–31, 97 S.Ct. at 1499.

*See also Ward v. Kort, supra,* 762 F.2d at 860; *Nordgren v. Milliken, supra,* 762 F.2d 851, 854–55 (10th Cir.1985). Indeed, a state might reasonably conclude that providing access to a law library is not the best means to assure prisoners access to the courts because it may force illiterate and uneducated prisoners to rely on prison petition writers and other forms of inmate assistance with all of the associated "dangers inherent in prisoners being able through these functions to exercise unreasonable control on their fellows ..." *Battle v. Anderson,* 614 F.2d 251, 259 (10th Cir.1980) (McKay, J., Concurring). In addition, the state, not the inmate, has the right to choose among constitutionally adequate alternatives. *Ward v. Kort, supra,* 762 F.2d at 860.

Furthermore, in assessing the adequacy of alternatives to law library access, we must keep in mind that the "right of access to the courts" merely requires prison authorities "to assist inmates in the preparation and filing of meaningful legal papers" and that the Supreme Court's "main concern" "is 'protecting the ability of an inmate to prepare a petition or complaint'." *Bounds, supra,* 430 U.S. at 828 & 828 n. 17, 97 S.Ct. at 1498 & 1498 n. 17, quoting *Wolff, supra,* 418 U.S. at 576, 94 S.Ct. at 2984. The Supreme Court has never extended "the Fourteenth Amendment due process claim based on access to the courts ... to apply further than protecting the ability of an inmate to prepare a petition or complaint." *Wolff, supra,* 418 U.S. at 576, 94 S.Ct. at 2984. In *Nordgren v. Milliken, supra,* where the state did not choose to have an adequate law library available to inmates, we declined to hold that the right of access to the courts required more than the assistance of counsel through comple-

tion of the complaint for a federal habeas or civil rights suit. 762 F.2d at 855.

The question here is whether plaintiff actually had access to such assistance, without interference by the defendants, so that his right of access to the courts was not infringed.

**D.**

■ Under these standards, we must determine whether plaintiff here was entitled to damages or declaratory relief for infringement of his right of access to the courts. Since plaintiff was incarcerated in the Summit County Jail for 7 months and the magistrate found him to be a long term detainee, I R. 57, this manifestly is not a case in which "brevity of confinement does not permit sufficient time for prisoners to petition the courts." *Cruz v. Hauck,* 515 F.2d 322, 333 (5th Cir.1975), *cert. denied, sub nom. Andrade v. Hauck,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). Moreover, although plaintiff's allegations are conclusory and the factual showing was weak, we will assume that the claims plaintiff wanted to assert were not insubstantial.

We conclude, however, that the plaintiff did not demonstrate a violation of his fundamental constitutional rights. He did not show that he was denied access to adequate legal assistance to help him prepare and pursue his claims before the courts or that defendants in any significant way restricted that access. Plaintiff had access to counsel to pursue his civil rights claims at all times during his incarceration at the Summit County Jail. When he first talked to his attorney in the criminal case about his potential civil rights claims, that attorney referred him to his attorney who is representing him in this action. This civil counsel declined to represent him in his civil rights claims but did provide him with the forms necessary to pursue his claims *in propria persona* and gave him limited instructions and encouragement on their use. See *Nordgren v. Milliken, supra,* 762 F.2d at 854. Plaintiff's civil counsel also told him other attorneys might be available and willing to take his case on a contingency basis and that he could assist him to find

someone; plaintiff did not ask him to do so. III R. 9–10.[6]

There is no evidence that the defendants in any way impeded plaintiff's contact with the courts, his access to his criminal attorney or to his civil counsel, or that they would have impeded his access to any additional legal assistance his civil counsel might have obtained. Defendants did deny plaintiff access to the law library. However plaintiff actually had access to alternative sources of legal assistance, as noted. The record shows that prisoners in the Summit County jail had access to the phone and that indigents had free postage for communications with the courts or their attorneys. In sum, we do not find in this record evidence of the kinds of actions the Supreme Court has recognized to be deprivations of an inmate's fundamental constitutional right of access to the courts. Despite the complaints made, the defendants' actions did not result in injury entitling plaintiff to damages or declaratory relief.

AFFIRMED.

---

**6.** We do not consider it important for our purposes that plaintiff's civil counsel, in the instant case, as noted by the district judge, was well qualified to represent plaintiff in asserting the claims plaintiff wanted to pursue regarding conditions of his confinement. We also do not agree with the district court that it is significant that this civil counsel declined to represent plaintiff in asserting claims regarding the conditions of his confinement.