**Richard Jerome MILLER, Plaintiff,**

**v.**

**Terry L. CAMPBELL, et al., Defendants.**

**No. 88–3410–S.**

United States District Court,
D. Kansas.

Sept. 15, 1992.

Richard Jerome Miller, pro se.

David W. Hauber, Boddington & Brown, Chtd., Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on defendants' motion for dismissal, or in the alternative, summary judgment (Doc. 12). Plaintiff, a former inmate at the Leavenworth County Jail, Leavenworth, Kansas, proceeds pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

In this action, plaintiff contends he was subjected to unconstitutional conditions of confinement while housed in the jail which violated his rights under the Eighth Amendment. He alleges the medical care was inadequate, access to legal assistance was unduly limited, and that during a lockdown occurring between approximately September 30, 1988, and October 3, 1988, he was subjected to unsanitary conditions. Plaintiff seeks declaratory relief and damages.

*Factual Background*

Plaintiff was incarcerated in the Leavenworth County Jail from approximately July 27, 1988, until his release on bond on October 28, 1988. His complaint involves both ongoing conditions of his confinement, including access to medical care and legal assistance, and a brief lockdown which occurred in late September and early October 1988. The facts relevant to plaintiff's lockdown appear here; other facts are incorporated in the discussion of plaintiff's remaining claims.

In late September 1988, plaintiff and several other inmates housed in Tank D of the jail were involved in a series of incidents which resulted in a decision to impose more restrictive conditions of confinement.

On September 18, inmates in the tank became upset when they were not given the telephone, although tank occupants had the telephone earlier in the day. Plaintiff advised a jailer the inmates would "raise hell" if the telephone were not provided and was told the telephone would be available when the inmates calmed down. That evening, due to the conditions in the tank, the inmates were fed on paper plates.

Plaintiff, in response to being fed on a paper plate, threw his plate of food at a jailer. This incident was followed by similar conduct by other inmates, who threw food, water, and tea at the jailer. Jail officials then shut off water to the tank to prevent the inmates from flooding the area. Plaintiff then threatened to kill the jailer.

On or around September 30, jail officials received confidential information that the inmates in Tank D planned to dismantle a floor fan in the tank and use the pieces as weapons in an escape. As a result, jail officials conducted a shakedown of the tank to search for contraband. During the shakedown, authorities found pieces of the fan, torn toweling, copper wire, and sharpened broom handles. Officials also found inmates were accumulating supplies, such as tobacco. Officials perceived these hoarded supplies as intended to clog facilities to cause flooding. There is also some evidence that inmates had removed electrical fixtures, leaving exposed electrical wires. Because of these conditions, authorities turned off electricity to the affected area.

That evening, the inmates were again verbally aggressive toward the officer supervising their meal. In response, the supervising officer shut down water to the tank. After an inmate threw tea on the officer, the cable television line was disconnected. Plaintiff and two other inmates were locked down in a cell. After the meal, when the supervising officer returned to retrieve the dinner trays and distribute medications, he discovered the trays from plaintiff's cell had been thrown out of the cell, spreading food over the area outside the cell. During this period, the water was turned on in the cell for sanitation and drinking water, and the supervising officer cleaned the floor.

Later that night, the responding officer discovered a significant amount of trash thrown outside the cell where plaintiff was confined. The trash was soaked with water or other liquid. The water to the cell was again turned off.

On October 1, 1988, the inmates remained in lockdown and continued to complain about the jail food and conditions. Food was again thrown outside the cell, and plaintiff refused his tray, stating he was beginning a hunger strike. Another inmate threw a glass of liquid on a jailer. As a result, the other inmate was placed in restraints.

*Standard for granting summary judgment*

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

*Discussion*

*Access to medical care*

Plaintiff first asserts he was not provided adequate medical care during his

incarceration. In order to state a claim of cruel and unusual punishment based on inadequate medical care, an inmate must demonstrate that prison officials are responsible for acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ The record before the court demonstrates plaintiff's requests for medical attention were processed by jail officials and reviewed by the facility physician. Plaintiff received medication and ongoing medical attention, including X-rays at the local hospital and dental care. Although plaintiff suffered from a number of unpleasant medical conditions, such as back pain, athlete's foot, and sore throats, the court concludes he received constitutionally adequate medical care. Plaintiff's complaint states no more than a difference of opinion regarding the nature of care offered, a matter which does not rise to a constitutional violation. *Smart v. Villar*, 547 F.2d 112 (10th Cir.1976). Plaintiff is entitled to no relief on this claim.

*Access to legal assistance*

Plaintiff next complains he was not permitted adequate access to the telephone to contact his attorney. (Complaint, pp. 2, 4.) It is well settled that inmates enjoy a constitutional right to meaningful access to the courts and that the states are obligated to assure inmates this access. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Love v. Summit County*, 776 F.2d 908 (10th Cir.1985), *cert. denied*, 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 25 (1986). The record before the court demonstrates plaintiff was given regular access to the telephone, (*Martinez* report, Duncanson ex. 2) and plaintiff has stated no injury which resulted from the alleged violation. While the court agrees reasonable access to counsel is required, petitioner is not entitled to relief on this claim.

*Conditions of confinement in lockdown*

■ Petitioner's final claim is that his rights were violated by the conditions of confinement in the lockdown. It is settled

that where an emergency exists in a prison setting, fewer procedural rights are implicated and prison authorities are given considerable deference in their decisions concerning institutional management. *See Hayward v. Procunier*, 629 F.2d 599 (9th Cir.1980), *cert. denied*, 451 U.S. 937, 101 S.Ct. 2015, 68 L.Ed.2d 323 (1981) (five-month general lockdown in San Quentin did not violate inmates' rights to procedural due process and freedom from cruel and unusual punishment); *Gilliard v. Oswald*, 552 F.2d 456 (2d Cir.1977) (upholding summary confinement of 140 inmates considered disruptive or potentially disruptive); *Jones v. Marquez*, 526 F.Supp. 871 (D.Kan. 1981) (summary lockdown of entire prison population and administrative segregation of 16 inmates approved in light of authorities' determination of state of emergency).

■ Considering plaintiff's claim in light of these authorities, the court rejects his argument he was subjected to cruel and unusual punishment. While it is uncontroverted that water and electricity were shut down for some period of time and telephone and television access was suspended for the inmates in lockdown, the court finds these deprivations were relatively brief and were reasonably related to legitimate correctional goals. The water to the cell was turned off to prevent flooding, and the action was a reasonable response to the events of September 30, when the inmates in the cell threw water-soaked trash into the walkway outside their cell. The evidence on the record shows the jail officials turned the water on at intervals to permit use of the toilets and sinks affected by the shutdown. The electricity was shut down after inmates damaged a light fixture, and the record clearly demonstrates that telephone access and cable television were withdrawn with the condition that these services would be restored upon the return of orderly conduct. There is evidence that jail officials were flexible regarding these services; on September 18, officials permitted an inmate a personal call after plaintiff offered to clean up trash thrown by inmates. After considering the record as a whole, the court concludes plaintiff's alle-

gations regarding the conditions of confinement in lockdown are insufficient to establish that the deprivations involved were both serious in nature and inflicted by officials acting with a "culpable state of mind," evincing deliberate indifference to dangerous conditions of confinement. *See Wilson v. Seiter,* — U.S. —, —, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). The conditions of confinement in question, although harsh, were of brief duration, and plaintiff has not demonstrated any injury which might reasonably support an inference of cruel or shocking treatment.

IT IS THEREFORE ORDERED defendants' motion for summary judgment is granted and all relief is denied.

The clerk of the court is directed to transmit copies of this Memorandum and Order to plaintiff and to counsel for defendants.