977 F.2d 1383
 Rickke Leon GREEN, Plaintiff-Appellant,
v.
Wayne JOHNSON; James Green; Don Morgan; Charles Arnold;
Ted Wallman; John Brown; Larry Peevy; Larry
Meachum; Gary A. Parsons; and James
Saffle, Defendants-Appellees.
 No. 90-7062.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 16, 1992.
 
 E.V. Spadafora of E.V. Spadafora & Associates, Oklahoma City, Okl., for plaintiff-appellant.
 Rickke Leon Green, pro se.
 Susan B. Loving, Atty. Gen. of Okl., and Gay Abston Tudor, Asst. Atty. Gen., Oklahoma City, Okl., for defendants-appellees.
 Before LOGAN, EBEL and KELLY, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiff Rickke Leon Green, an inmate at the Oklahoma State Prison (OSP), appeals a judgment of the district court awarding him $15,000 in damages in this 42 U.S.C. § 1983 suit. The district court, in a bench trial, found that defendants, various prison officials and guards, exceeded permissible constitutional parameters in their actions.[1]
 
 
 2
 Although plaintiff won on the central issues in the district court, he is the appellant, contending that the district court erred (1) in not granting an injunction enjoining defendants' behavior, (2) in ruling that his pendent state claims were barred by the statute of limitations, (3) in not awarding separate damages for each constitutional violation, (4) in ruling that the seizure of his legal materials was reasonable and necessary, (5) in not awarding sufficient compensatory damages, and (6) in not awarding punitive damages. Plaintiff raises other issues in his pro se brief as discussed below.
 
 
 3
 * Facts
 
 
 4
 In 1972, plaintiff, then sixteen, was incarcerated following his conviction in state court for armed robbery.[2] Plaintiff has remained incarcerated over the past twenty years because of additional convictions that have been imposed as a result of his assaultive behavior. In 1975 plaintiff was placed in administrative segregation because of his aggressive and assaultive conduct, both for his protection and for the protection of others. He remained there continuously until 1984 and has been in administrative segregation for most of the time since. The egregious facts reveal that plaintiff had been directing animalistic behavior towards some of the defendants over a period of years, perhaps exacerbated by the conditions of his confinement. No doubt these actions tempted the defendants and provoked the reactions that occurred here. But not even plaintiff's most egregious behavior will excuse the conduct exhibited by those charged with his care.
 
 
 5
 In 1983, plaintiff had a verbal altercation with defendant James Green, then a correctional officer at OSP.[3] Plaintiff alleged that the altercation was precipitated by Officer Green's delay in getting a plumber to fix plaintiff's toilet and by Officer Green directing racial slurs towards him. Officer Green alleged that the altercation was instigated by plaintiff intentionally stopping up his toilet and throwing body wastes at him when he served plaintiff his noon meal. A similar altercation occurred the next morning between plaintiff and defendant Larry Peevy, also a correctional officer.
 
 
 6
 Following these incidents, a meeting was held between defendants Wayne Johnson[4] (the cell unit manager), Charles Arnold (Chief of Security), Ted Wallman (Deputy Warden of Operations), and Warden Brown to discuss plaintiff's disruptive behavior. Johnson admitted saying that plaintiff "needed a good ass-kicking" during the meeting. R. tab 8, at 7. "Warden Brown instructed the officers to put plaintiff on short food rations for seventy-two hours. Thereafter, if the disruptive behavior continued, he was to be put back on short food rations and clearly informed that the rationing was a consequence of his behavior." Id.
 
 
 7
 Another altercation between Johnson and plaintiff occurred later that day when Johnson, as directed by Wallman, attempted to lock plaintiff's "bean hole," an opening next to the cell door used to pass food to plaintiff. Johnson was unable to close the bean hole, which plaintiff had jammed open. Johnson then went to the control room. Peevy, who was in the control room, was instructed to let an inmate into the common area to mop the floor. The inmate allowed in, Bobby Morris, had not previously been designated for that job. Warden Brown testified before the Ethics and Merits Commission that Morris had been involved in a hostage situation the previous month and was not an appropriate choice for the job. Id. at 8 n. 8. After being escorted to the property room by defendants Morgan[5] and Green, Morris threw a scalding substance through plaintiff's bean hole, causing second degree burns on plaintiff's chest and neck. No officer interceded, nor was any notation entered into the log book.
 
 
 8
 About two hours later, when a paramedic came to the unit, plaintiff showed him his burns. Plaintiff was then escorted to the infirmary, but refused treatment because the medic on duty refused to report the incident. When plaintiff was returned to his cell, Johnson knocked him to the floor from the rear while plaintiff was still handcuffed. Morgan, Green, and Peevy also entered the cell and, using "unnecessary excess force," restrained plaintiff. Id. at 10. "Plaintiff was pinned down by four large correction officers. Plaintiff was struck more than once on his face and head. His body was repeatedly kicked and his feet were twisted at the ankle." Id. Defendants later produced a knife "in an effort to justify the use of force against plaintiff." Id. at 11. Johnson "testified that he held the knife against plaintiff's nose and said 'I ought to run this through your mother-fucking brain'. Plaintiff received a cut on his nose and under his eye." Id. The court found defendants' testimony that the knife belonged to plaintiff "incredible and unreliable under the evidence." Id.
 
 
 9
 Plaintiff was taken back to the infirmary where he was again attacked. "Johnson lectured plaintiff. Green and Morgan would strike plaintiff about the face and neck if he was unresponsive to Johnson's commentary, and use other means of intimidation." Id.
 
 
 10
 Arnold and Wallman were notified and went to the infirmary. Wallman ordered plaintiff's cell stripped, an action for which he was later reprimanded. After plaintiff's burns were treated, he was escorted back to his stripped cell and his clothing was removed. An inmate later slipped pen and paper to plaintiff, who wrote Warden Brown a letter setting forth the events.
 
 
 11
 The next morning, shortly before Brown arrived, plaintiff was transferred to another cell that had a mattress, blanket, and toilet paper. He was also given his coveralls. Brown escorted plaintiff back to the infirmary where photographs were taken of his injuries. Brown also ordered an internal investigation.
 
 
 12
 In 1985, plaintiff commenced this action alleging violations of his Fifth, Eighth, and Fourteenth Amendment rights. In 1990, after a six-day bench trial, the district court awarded plaintiff $15,000 in damages against defendants Johnson, Green, Morgan, Wallman, Arnold, and Peevy, jointly and severally, in their individual capacities.[6] The court denied injunctive relief.
 
 II
 Record Deficiencies
 
 13
 Initially, we note that our review of this appeal has been substantially hindered by the record, or lack thereof, submitted to this court. Plaintiff was represented by counsel on appeal through the filing of counsel's brief. Counsel was responsible for designating those portions of the "papers filed in the district court which are relevant to specific arguments made in the briefs" for inclusion in the record on appeal. 10th Cir.R. 10.2.1. The record as submitted consists of plaintiff's closing argument, defendants' proposed findings of fact and closing arguments, plaintiff's response to defendants' closing arguments, and the district court's findings of fact and conclusions of law. This record is clearly insufficient for meaningful review.
 
 
 14
 Further, if, as here, an appellant intends to urge "that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." Fed.R.App.P.10(b)(2). In his brief, counsel stated that he had requested a transcript but despite repeated attempts had not received any response except an unfulfilled promise that the court reporter would give him an estimate of the cost of the transcript. The lack of response from the court reporter does not excuse either plaintiff or his counsel from his responsibility to provide a transcript.
 
 
 15
 There were several options by which plaintiff and counsel could have pursued this issue. They could have requested that briefing be delayed pending receipt of the transcript. They could have requested this court's intervention. Cf. United States v. Johnson, 732 F.2d 379, 383 (4th Cir.) (court has supervisory powers over court reporters including power to punish for civil contempt and authority under 28 U.S.C. § 1651 to grant mandamus and other extraordinary relief), cert. denied, 469 U.S. 1033, 105 S.Ct. 505, 83 L.Ed.2d 396 (1984); Morales Roque v. Puerto Rico, 558 F.2d 606, 607 (1st Cir.1976) (court order directing expeditious preparation of transcript appropriate).
 
 III
 Injunction
 
 16
 Plaintiff argues that the district court erred in not granting an injunction prohibiting defendants' behavior. A denial of injunctive relief is reviewed under an abuse of discretion standard. The Post Office v. Portec, Inc., 913 F.2d 802, 813 (10th Cir.1990), vacated on other grounds, --- U.S. ----, 111 S.Ct. 1299, 113 L.Ed.2d 235 vacated as moot, 935 F.2d 1105 (10th Cir.1991). The district court held that "there was no evidence offered that racially derogatory remarks are currently being used against plaintiff at OSP." R. tab 8 at 18. Although plaintiff argues that he requested an injunction because defendants were continuing to retaliate against him for filing this action, no evidence is present in the record before us showing that plaintiff requested an injunction on this basis or that retaliation, abusive behavior, or racially derogatory remarks are continuing. The district court did not abuse its discretion by failing to grant injunctive relief against defendants.
 
 
 17
 Plaintiff has submitted a "notice" to this court in which he alleges his access to legal materials and the courts continues to be restricted by defendants. Plaintiff specifically states that defendants have prevented him from filing a reply brief in this court. Because we are not a trier of fact, we remand this issue for the district court to determine whether plaintiff was deprived of his ability to file a reply brief and, if so, whether that denial resulted in any prejudice to him. Prejudice or not, defendants are cautioned to limit their behavior within the parameters of plaintiff's constitutional rights.
 
 IV
 Pendent State Claims
 
 18
 Plaintiff argues that the court erred in ruling that his state assault and battery claim was barred by the statute of limitations. The district court correctly held that this claim was barred by Okla.Stat. tit. 12, § 95(4). Although the two-year statute of limitations for injury to the rights of another governed plaintiff's federal § 1983 claims, this claim, brought under state law, is governed by section 95(4), and was therefore properly dismissed.
 
 
 19
 In his pro se brief, plaintiff argues that his state claim for intentional infliction of emotional distress is governed by the state's two-year statute of limitations. We agree. See Williams v. Lee Way Motor Freight, Inc., 688 P.2d 1294, 1296-98 (Okla.1984). However, the liability insurance policy obtained by the state pursuant to Okla.Stat. tit. 57, § 553 only waived the state's sovereign immunity as to the claim for assault and battery. Thus, any action for intentional infliction of emotional distress brought against the officers in their official capacities is barred by the Eleventh Amendment. Meade v. Grubbs, 841 F.2d 1512, 1524-26 (10th Cir.1988). Such a claim brought against defendants in their individual capacities, however, is not so barred. Id. at 1526 n. 16. Consequently, the district court erred in dismissing plaintiff's state-law claim for intentional infliction of emotional distress brought against defendants in their individual capacities, and we must reverse and remand for reconsideration of this claim.
 
 V
 Damages
 
 20
 Plaintiff argues that the court erred in not awarding separate damages for each constitutional violation, in not awarding sufficient compensatory damages, and in not awarding punitive damages.
 
 
 21
 Plaintiff points us to no law, nor are we aware of any, requiring the court in a bench trial to apportion damages to each violation. Further, the record contains no evidence, nor does plaintiff allege, that he asked for special findings and damage awards for each injury. The district court did not err in making one award of damages covering all constitutional violations.
 
 
 22
 The district court awarded plaintiff $15,000 in compensatory damages. A trial court determination of damages will not be deemed inadequate unless the district court abused its discretion in calculating the proper award. Abuse of discretion will not be found unless the damages awarded are "so inadequate as to shock the judicial conscience." Black v. Hieb's Enters., Inc., 805 F.2d 360, 362 (10th Cir.1986) (internal quotation omitted). There is no right to more than nominal damages simply because one's constitutional rights have been violated. Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978). Compensatory damages replace lost past earnings or future earning capacity or pay a reasonable sum for pain and suffering. Given that plaintiff is a ward of the state, provided with room, board, and medical care, his need for financial restitution based on his injuries is substantially less than that of persons responsible for their own economic support. He did not lose a job. The district court found that plaintiff was cut on the nose and under his eye and suffered second degree burns. But the record before us contains no evidence plaintiff suffered permanent injuries or disfigurement. Perhaps a higher award would have been justified for pain and suffering or scarring, if any occurred, but without more than we have in the record before us we cannot hold the district court's award inadequate.
 
 
 23
 Punitive damages are available in § 1983 cases, but should "be awarded only when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' " Jolivet v. Deland, 966 F.2d 573, 577 (10th Cir.1992) (quoting Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983)). We review the district court's ruling on punitive damages under an abuse of discretion standard. Id. We will reverse the determination only if we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).
 
 
 24
 The record in this case would support a punitive damages award considering only the behavior of defendants. The reason no award was made was the district court's finding that plaintiff provoked the officers by throwing human waste on them and by being "highly combative"; it said his "conduct mitigates against an award of punitive damages." R. tab 8 at 23. The record supports that observation. We cannot hold that the district court abused its discretion in refusing to award punitive damages.
 
 VI
 Access to the Courts
 
 25
 Plaintiff alleges that he was denied access to the courts in three ways: (1) his legal materials, including evidence in this case, and his research were seized; (2) defendants unlawfully destroyed these items after seizing them; and (3) he was denied access to the law library. Plaintiff asserts that, as a consequence of defendants' actions, eight of his cases were dismissed for lack of prosecution and he was unable to present sufficient evidence in this case.
 
 
 26
 The constitutional right of access to the courts is guaranteed by the Due Process Clauses of the Fifth and Fourteenth Amendments. Ward v. Kort, 762 F.2d 856, 858 (10th Cir.1985). As stated by the Supreme Court, that right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Conversely, prison officials may not affirmatively hinder a prisoner's efforts to construct a nonfrivolous appeal or claim. "Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation." Jackson v. Procunier, 789 F.2d 307, 311 (5th Cir.1986).
 
 
 27
 It appears from his pro se brief that plaintiff alleged that defendants' destruction of his legal material was taken in retaliation for the suits and grievances he had filed. "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." Smith v. Maschner, 899 F.2d 940, 947 (10th Cir.1990). Plaintiff need not have alleged retaliation, however, in order to have presented a constitutional claim. See Wright v. Newsome, 795 F.2d 964, 968 (11th Cir.1986). Therefore, if true, plaintiff's allegations concerning the improper destruction of his legal materials and his denial of access to the law library would form the basis for a cognizable claim for a violation of plaintiff's right of access to the courts.
 
 
 28
 The district court held that the prison rules permitting inmates two cubic feet of legal materials in their cells were "reasonable and necessary for orderly maintenance of the facility and proper security." R. tab 8 at 22. We agree. Cf. Cruz v. Hauck, 515 F.2d 322, 333 (5th Cir.1975) (finding restriction of legal materials in cell reasonable in light of security and fire dangers), cert. denied, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976).
 
 
 29
 Nevertheless, the district court also found that because plaintiff "was unable to produce sufficient evidence of denial of access to legal materials," R. tab 8 at 21, and because "the evidence was insufficient, conflicting, and inconclusive," id. at 22, it could not make a determination as to the merits of this claim.
 
 
 30
 Generally, if a plaintiff in a civil action does not put on sufficient evidence to prevail, the court will simply enter judgment for defendant on that claim. Because the district court did not enter such a judgment here, it is possible the court had indications plaintiff was precluded from putting on adequate evidence or citing adequate legal authorities because of unconstitutional behavior by defendants. The district court's findings and conclusions are inadequate to make a determination as to which party should be held responsible for plaintiff's inability to meet his burden of proof.
 
 
 31
 On remand, the district court should determine which party should be held responsible. If it finds defendants are responsible, the court should take any steps necessary to obtain sufficient evidence to decide the issue on the merits. The court should also consider whether sanctions should be entered against defendants for their obstructive actions.
 
 
 32
 Plaintiff called two inmates to testify, apparently on both remaining claims. Both refused to testify. Plaintiff then called three other inmates who "provided credible testimony" that a correctional counselor had intimidated the two nontestifying inmates so that they would not testify. Id. at 21. One was told that "if he testified he could lose his Trustee status and be back 'behind the wall.' " Id. The court did note that one of the intimidated witnesses had previously provided the Department of Corrections with a statement. The court does not appear to have considered the contents of that statement in reaching its decision.
 
 
 33
 In United States v. Balano, 618 F.2d 624 (10th Cir.1979), cert. denied, 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980), a witness refused to testify at defendant's criminal trial. This court held that the witness' grand jury testimony was admissible against the defendant in light of evidence that threats had been made by the defendant against the life of the witness. Id. at 630. This case is analogous. Because defendants intimidated the witness, thus preventing his testimony at trial, his statement to the Department of Corrections should be considered by the court on remand.
 
 
 34
 On remand, the district court should determine whether defendants did destroy plaintiff's legal materials and whether plaintiff was denied access to the law library or adequate assistance from persons trained in the law. If either of these questions is answered in the affirmative, the court should next decide whether, as a result, plaintiff was denied access to the courts. See Twyman v. Crisp, 584 F.2d 352, 357 (10th Cir.1978) (requiring that prisoner must show he has been prejudiced in his lawsuits by inability to use library or other resources). The district court did find that five of plaintiff's cases were dismissed on appeal for lack of prosecution and two others were dismissed after "the district court denied plaintiff's request for access to the prison law library." R. tab 8 at 20. This finding appears to support plaintiff's claim that he was denied access to the courts. Finally, the district court must determine whether any of defendants' actions were retaliatory in nature, bearing in mind that plaintiff must "prove that the actual motivating factor behind defendants' actions was retaliation for his prior or current litigation." Smith, 899 F.2d at 949.
 
 VII
 Dismissal of Defendant Brown
 
 35
 Plaintiff argues that defendant Brown was improperly relieved from defending this action. Apparently the United States marshal served plaintiff's complaint on the then warden of the prison, Gary Maynard.[7] The docket sheet shows that Brown filed a motion to dismiss on May 5, 1987, over eighteen months after the case was filed. The district court denied the motion on July 8. On September 24, 1987, plaintiff, acting pro se, filed a motion for clarification regarding the status of Brown. In his pro se brief, plaintiff states that he filed the motion because Brown had not defended the action aside from filing his motion to dismiss. Four days later, the district court entered an order holding that "John Brown is under no duty to appear at trial or before this Court as party deft." Docket Entry for Sept. 28, 1987.
 
 
 36
 Plaintiff concedes that at some time Brown raised the issue that plaintiff had failed to properly effect service of process. Because the district court denied Brown's motion to dismiss, and that appears to have been Brown's first filing in the case, we assume that the motion was not made on that ground. Once the district court denied Brown's motion, he was obligated to defend.
 
 
 37
 Brown was properly relieved in his official capacity of his duty to defend when a new warden replaced him. However, the district court found that Brown personally ordered reduced rations for seventy-two hours for plaintiff with the further warning that the punishment would again be imposed if plaintiff's disruptive behavior continued. The deprivation of essential food can state a constitutional claim. See Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Allegations of misconduct brought against Brown in his individual capacity must be defended personally by Brown.
 
 
 38
 Therefore, we must remand on this issue also. The district court should determine whether plaintiff actually alleged personal involvement by Brown. If so, the court should then proceed as the facts warrant.
 
 VIII
 Discovery
 
 39
 Plaintiff argues that the district court erred in its various discovery orders, including limiting discovery against defendants Meachum and Parsons to such an extent that he had to dismiss them before trial for lack of evidence against them.
 
 
 40
 The trial court has broad discretion regarding its control of discovery, and we will find that discretion to have been abused only when a denial of discovery precludes a fair trial. Shaklee Corp. v. Gunnell, 748 F.2d 548, 550 (10th Cir.1984).
 
 
 41
 The district court's docket sheet shows several instances in which plaintiff appeared to be having trouble obtaining discovery from defendants. The court did order defendants to provide the requested discovery. Plaintiff has not identified what discovery he was prevented from obtaining, and the record is of no assistance in this regard. We cannot say the district court abused its discretion in its rulings.
 
 IX
 Other Issues
 
 42
 Plaintiff argues that the district court abused its discretion by not sanctioning defendants' counsel, Don G. Pope. The docket sheet shows that plaintiff's motion for sanctions was denied although defendants were directed to produce the requested discovery. We review the district court's determination on sanctions for an abuse of discretion. Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am., 935 F.2d 1152, 1155 (10th Cir.1991). The record as submitted shows no such abuse.
 
 
 43
 We have considered plaintiff's remaining arguments and find them to be without merit.
 
 
 44
 Plaintiff's motion to file a supplemental brief in excess of fifty pages is GRANTED. The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED in part, REVERSED in part, and the cause is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 We recite the facts as found by the district court, which neither party has disputed on appeal. We are mindful of the district court's caveat that
 the credibility of almost all of the witnesses is wanting. With few exceptions the testimony is conflicting. Among the defendants the testimony is underplayed and is often inconsistent with their prior statements. Plaintiff's testimony is exaggerated or has grown in intensity with the passage of time. The facts, in part, are determined from admissions against interest and the thin threads of consistent testimony revealed at trial. The Court scrutinized the credibility of witnesses and exhibits in order to arrive at the most truthworthy version of the events which occurred on October 20, 1983 at OSP.
 R. tab 8 at 4 n. 4.
 
 
 [3]
 Defendant Green was discharged by the then warden, defendant John Brown, following an internal investigation of this incident
 
 
 [4]
 Officer Johnson was also discharged by Warden Brown after the internal investigation
 
 
 [5]
 Morgan was reassigned to another prison facility following the internal investigation because of "Morgan's questionable credibility and truthfulness" during the investigation. Id. at 6
 
 
 [6]
 Meachum and Parsons were dismissed by plaintiff before trial
 
 
 [7]
 The current warden is James Saffle, who has been substituted as a defendant in his official capacity. See Fed.R.Civ.P. 25(d)(1)