Robin BEVILLE, Plaintiff–Appellant,

v.

Matthew EDNIE, Teton County Jail Deputy; Russell Stewart, Teton County Jail Supervisor, Defendants–Appellees.

No. 94–8001.

United States Court of Appeals, Tenth Circuit.

Jan. 22, 1996.

Daniel J. Sears, of Daniel J. Sears, P.C., Denver, Colorado, court-appointed counsel for Plaintiff–Appellant.

Terry L. Armitage, Senior Assistant Attorney General, Cheyenne, Wyoming (Michael R. Mullikin, of Mullikin, Larson & Swift, Jackson, Wyoming, with him on the brief for Defendants–Appellees, in their official capacity), for Defendants–Appellees, in their individual capacity.

Paul K. Knight, of Mullikin, Larson & Swift, Jackson, Wyoming, for Defendants–Appellees, in their official capacity.

Before SEYMOUR, Chief Judge, BARRETT, Circuit Judge, and DAUGHERTY, District Judge.*

SEYMOUR, Chief Judge.

Robin Beville appeals the district court's grant of defendants' motion for summary judgment and denial of his cross-motion for summary judgment. Mr. Beville, a state prisoner, brought this action under 42 U.S.C. § 1983 against appellees Matthew Ednie and Russell Stewart, who are deputies at the Teton County Detention Facility, alleging that they violated his constitutional rights by denying him effective access to the courts and screening his mail while he was in their facility. We affirm.

## I.

On September 23, 1991, Mr. Beville was arrested for a probation violation by local police officers in Jackson, Wyoming. For the next eighteen days he was held in the Teton County Detention Facility. He was then extradited to Spokane, Washington.

During his incarceration in Teton County, Mr. Beville sought to file a civil lawsuit against the Colorado Department of Corrections for wrongfully holding him in jail past the date of his mandatory discharge. He also wished to research whether Teton County officials were violating his rights. The Teton County Detention Facility did not have

---

* The Honorable Fred Daugherty, Senior United States District Judge for the Western, Eastern and Northern Districts of Oklahoma, sitting by designation.

a law library, however, nor was it staffed with anyone trained in the law who could assist prisoners.[1] Although Mr. Beville was unable to pursue his suit against the Colorado Department of Corrections during his incarceration in Teton County, he subsequently sued the Department before the statute of limitations expired.

Mr. Beville brought the present action under section 1983 against Mr. Ednie and Mr. Stewart in their individual and official capacities. He maintained that defendants · monitored his phone calls, including privileged communications with his attorney,[2] obstructed and denied his access to the courts, and examined and read his mail. On appeal, he contends the district court erred in granting defendants' motion for summary judgment.

■ We review a grant of summary judgment de novo. *Thrasher v. B & B Chem. Co.,* 2 F.3d 995, 996 (10th Cir.1993). Summary judgment is only warranted where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *FDIC v. Oldenburg,* 34 F.3d 1529, 1539 (10th Cir.1994). Although Mr. Beville asserts that several factual disputes were not resolved in discovery, he has not identified any fact issue which would affect our resolution of his constitutional claims, to which we now proceed.

## II.

■ We first consider Mr. Beville's argument that defendants violated his right to access to the courts. The Constitution guarantees "inmates the right to 'adequate, effective, and meaningful' access to the courts." *Petrick v. Maynard,* 11 F.3d 991, 994 (10th Cir.1993) (quoting *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72

(1977)); *see also Green v. Johnson,* 977 F.2d 1383, 1389 (10th Cir.1992).[3] Accordingly, "prison authorities [must] assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. "A prison inmate's right of access to the courts is the most fundamental right he or she holds. 'All other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the prison warden.'" *DeMallory v. Cullen,* 855 F.2d 442, 446 (7th Cir.1988) (quoting *Adams v. Carlson,* 488 F.2d 619, 630 (7th Cir.1973)). "This court has held that the constitutional right recognized in *Bounds* ... extends to county jails." *Housley v. Dodson,* 41 F.3d 597, 598 (10th Cir.1994); *see also Love v. Summit County,* 776 F.2d 908, 912 (10th Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 25 (1986).

■ It is undisputed that Mr. Beville was denied access to a law library or legal assistance. Relying on *Ruark v. Solano,* 928 F.2d 947 (10th Cir.1991), defendants argue that Mr. Beville failed to state a claim for recovery because he suffered no injurious consequences stemming from the County's denial of access to a law library.[4] Defendants misread *Ruark.* There, we recognized past decisions holding that absent "allegations of injurious consequences, [a] plaintiff presents no actionable claim," but declared this rule inapplicable where there "is no showing of access to alternative legal resources." *Id.* at 950. As a general rule, "[a] prisoner's constitutional right to access to legal resources is not conditioned on a showing of need." *Id.*

---

1. Mr. Beville informed the district court that the facility is now staffed with an attorney to assist prisoners.

2. Mr. Beville does not pursue this claim on appeal.

3. *Bounds* did not locate the foundation for this right, and subsequent decisions have identified several possible constitutional sources. *See Carper v. DeLand,* 54 F.3d 613, 616 n. 3 (10th

Cir.1995); *John L. v. Adams,* 969 F.2d 228, 231 (6th Cir.1992).

4. The district court determined that the denial of access to legal facilities was not taken pursuant to any official policy or custom of Teton County, and therefore denied recovery against defendants in their official capacity. Although Mr. Beville appeals this ruling, defendants have failed to answer his arguments. In light of our ultimate disposition of this case, this waiver does not prove dispositive.

Nevertheless, we have indicated that the length of incarceration without access to legal materials may affects whether a prisoner's rights were violated. Where a prisoner alleged he "was totally denied access to a law library or alternative legal resources for his entire nine month confinement" in a particular unit, he stated a claim under section 1983. *Ruark,* 928 F.2d at 948, 950; *see also Love,* 776 F.2d at 914. ("Since plaintiff was incarcerated ... for 7 months ..., this manifestly is not a case in which 'brevity of confinement does not permit sufficient time for prisoners to petition the courts.'" (*quoting Cruz v. Hauck,* 515 F.2d 322, 333 (5th Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976)). More recently, we held that an "alleged six-month denial of all access is not so *de minimis*" as to fail to support a cognizable claim. *Housley,* 41 F.3d at 599. However, we recognized in *Housley* that "there may be cases where a prisoner is denied access for such a short time that prejudice would have to be shown...."[5] *Id.*

■ Mr. Beville was incarcerated in Teton County for only eighteen days. He later filed the lawsuit on which he wished to work while incarcerated, and he has not alleged that his lost access during the eighteen days hurt his ability to protect his legal rights in any way. He suggests *Green v. Johnson,* 977 F.2d 1383, 1389 (10th Cir.1992), established that a "delay of access" amounts to a constitutional deprivation. However, *Green* asserted that defendants' actions caused "eight of his cases [to be] dismissed for lack of prosecution." *Id.* No such harm resulted here. Indeed, *"Bounds* recognized that some delays in the preparation of legal papers are inevitable and that inmates not facing court deadlines might have to wait three or four weeks for their turn in the library."

*Harrell v. Keohane,* 621 F.2d 1059, 1061 (10th Cir.1980); *see also Twyman v. Crisp,* 584 F.2d 352, 357–58 (10th Cir.1978) (per curiam) ("He claims he has had to file for extensions of time, but certainly this condition is not uncommon to real lawyers."). Similarly, where an inmate's right to access is accommodated through the provision of legal services, *see, e.g., Bee v. Utah State Prison,* 823 F.2d 397 (10th Cir.1987), administrative delays of several days are surely routine.

Because Mr. Beville's incarceration in the Teton County Detention facility was so short and he was not prejudiced by the denial of legal resources during his stay, we hold that his right to access to the courts was not violated.

### III.

■ We turn now to Mr. Beville's contention that defendants' practice of reading his outgoing mail violated the First Amendment. Teton County Detention Facility regulations provided: "Inmate mail, both incoming and outgoing, may be read (but never censored, i.e. changed) if there is reasonable cause to justify such reading. Such reasonable cause shall be documented." Aplee.Supp.App. at 43. Defendants admitted that they "scanned" all non-legal outgoing mail and, at least in Mr. Beville's case, did not document cause. Mr. Beville attacks the constitutionality of this practice, not of the county's official policy.[6]

■ The Supreme Court has ruled that restrictions on outgoing inmate mail must be generally necessary to protect an important government interest. *See Procunier v. Martinez,* 416 U.S. 396, 412–14, 94 S.Ct. 1800,

---

**5.** On this point, *Housley* is in accord with other circuits that have considered this question. *See, e.g., DeMallory v. Cullen,* 855 F.2d 442, 448–49 (7th Cir.1988) ("Generally, we have required a showing of prejudice only where minor or indirect limitations on access to courts are alleged."); *Jones v. Smith,* 784 F.2d 149, 152 (2nd Cir.1986) (In light of "the short confinement" of 30 days, "any denial of access was *de minimis*."); *Morrow v. Harwell,* 768 F.2d 619, 624 (5th Cir. 1985) ("[T]here is no right of access to the courts for those prisoners whose 'brevity of confinement does not permit sufficient time to petition the

courts.'" (*quoting Cruz v. Hauck,* 515 F.2d 322, 333 (5th Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976)).

**6.** Of course, establishing that defendants violated jail regulations does not suffice to establish a violation of the First Amendment, the protections of which cannot depend on the vagaries of local law. *Cf. Atencio v. Board of Educ.,* 658 F.2d 774, 779 (10th Cir.1981) ("[A] breach of state procedural requirements is not, in and of itself, a violation of the Due Process Clause.").

1810–11, 40 L.Ed.2d 224 (1974), *overruled in part, Thornburgh v. Abbott,* 490 U.S. 401, 411–14, 109 S.Ct. 1874, 1880–82, 104 L.Ed.2d 459 (1989) (limiting *Martinez* to outgoing mail). Although outgoing mail generally does not threaten prison order and security, the Court has indicated that a prisoner's personal outgoing mail may be restricted if it falls into a category which poses a threat, including "escape plans, plans related to on-going criminal activity, and threats of blackmail or extortion." *Abbott,* 490 U.S. at 411–12, 109 S.Ct. at 1881. In order to enforce permissible restrictions which are reasonably related to substantial government interests, corrections officers must be able to inspect all outgoing mail.

■■■ Mr. Beville's reliance on *Brewer v. Wilkinson,* 3 F.3d 816 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994), is misplaced, for that case concerned outright censorship of legal mail—the alleged removal of a writ of mandamus mailed to a court. Mr. Beville's non-legal outgoing mail was examined, not censored. "[F]reedom from censorship is not equivalent to freedom from inspection or perusal." *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). Although the inspection of mail may chill some inmate speech,[7] it clearly satisfies the Supreme Court's mandates in *Martinez* and *Abbott.*[8] We hold that defendants did not violate Mr. Beville's rights when they examined his outgoing nonlegal mail.

The judgment of the United States District Court for the District of Wyoming is **AF-FIRMED.**

---

7. "A prisoner's free and open expression will surely be restrained by the knowledge that his every word may be read by his jailors and that his message could well find its way into a disciplinary file, be the object of ridicule, or even lead to reprisals." *Martinez,* 416 U.S. at 423, 94 S.Ct. at 1816 (Marshall, J., concurring); *see also United States v. Ramsey,* 538 F.2d 415, 420 (D.C.Cir. 1976), *rev'd on other grounds,* 431 U.S. 606 (1977).

8. Moreover, "[s]everal circuits ... have held that prison officials do not commit constitutional violations by reading prisoners' outgoing nonprivileged mail." *Gassler v. Wood,* 14 F.3d 406, 408 n. 5 (8th Cir.1994) (relating cases); *see also Leonard v. Nix,* 55 F.3d 370, 377 (8th Cir.1995) (Wollman, J., dissenting) ("All inmates know their mail can be read by prison officials....").