86 F.3d 1166
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Edward Lee CLEMMONS, Plaintiff-Appellant,
v.
Steven J. DAVIES, Brent L. DUNCAN, Defendants-Appellees.
 No. 94-3268.
 United States Court of Appeals, Tenth Circuit.
 May 29, 1996.
 
 Before SEYMOUR, Chief Judge, McKAY and HENRY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff Edward Lee Clemmons, a prisoner in the custody of the Kansas Department of Corrections, appeals the district court's order granting summary judgment to the defendants, Kansas Department of Corrections officials Steven J. Davies and Brent L. Duncan, on his claims that the seizure of legal material from his cell violated his constitutional rights. For the reasons set forth below, we vacate the district court's grant of summary judgment to the defendants and remand the case for further proceedings.
 
 I. BACKGROUND
 
 4
 In his complaint, Mr. Clemmons alleges that in June 1991, while he was incarcerated at the Lansing Correctional Facility in Lansing, Kansas, the defendant Brent L. Duncan, a Kansas Corrections Officer, seized several boxes of legal material from his cell. According to Mr. Clemmons, these materials included "legal files of eight (8) ongoing and pending litigations [sic] in federal Courts [,] ... material concerning anticipated cases wherein the plaintiff is a party, ... pleadings, video tape from attorneys, trial transcripts, legal books, notes, drafs [sic], and correspondence to and from attorneys, courts, and public officials." Rec. doc. 2 at 3. Mr. Clemmons alleges that he was given no prior notice that this material would be taken from him, and that, as a result of the seizure, eight of his pending cases were dismissed. Pursuant to 42 U.S.C. § 1983, Mr. Clemmons's complaint asserts that the seizure violated his Fourth Amendment right to be free from unreasonable searches and seizures, his constitutional right of access to the courts, and his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The complaint names as defendants Officer Duncan and Steven J. Davies, the Secretary of the Kansas Department of Corrections at the time of the seizure. It requests a declaratory judgment and compensatory and punitive damages.
 
 
 5
 In response to Mr. Clemmons's complaint, the defendants submitted a report pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978). The Martinez report explains the seizure of legal material from Mr. Clemmons's cell as based on Internal Management Policy and Procedure (IMPP) 012-120, which became effective on April 15, 1991. IMPP 012-120 provides that prisoners may retain in their cells only that quantity of legal materials that can be contained in a box measuring 18" X 12" X 6" and a second "standard transport/storage box"--which is to be used primarily for the storage of other personal property. See Rec. doc. 20, Ex. C at 4, 6. The report further explains that corrections officials allow inmates to substitute material on a page by page basis--so that they may obtain new legal material while remaining within the limitations of IMPP 012-0120. See id., Ex. F at 2. IMPP 012-120 was promulgated in response to inspection reports from the state fire marshal, which had concluded that the practice of allowing prisoners to accumulate an unlimited quantity of legal material in their cells constituted a fire hazard. See id., Ex. G at 2.
 
 
 6
 The Martinez report further states that, on June 6, 1991, Mr. Clemmons was transferred from the Lansing Correctional Facility to the Hutchison Correctional Facility in Hutchison, Kansas. On that date, Officer Duncan conducted an inventory of Mr. Clemmons's cell. According to his affidavit, Officer Duncan determined that the volume of legal material in Mr. Clemmons's cell exceeded the amount allowed under IMPP 012-120. Officer Duncan then removed four boxes of material from Mr. Clemmons's cell and mailed them to Mr. Clemmons's son at a Kansas City, Missouri address. According to Officer Duncan's affidavit, Mr. Clemmons had provided the address for his son. Officer Duncan adds:
 
 
 7
 In checking the legal materials and books in question, I did not pay attention to case titles other than for the purpose of identifying the documents as legal materials, and I was not aware that plaintiff had sued then-Secretary of Corrections Steven J. Davies nor did I require plaintiff to send out legal materials pertaining to that action or any other for the purpose of hindering the plaintiff's ability to prosecute those cases.
 
 
 8
 Id., Ex. B at 2-3.
 
 
 9
 After the district court notified the parties that it would treat the Martinez report as a motion for summary judgment, Mr. Clemmons filed an objection contesting a number of the defendants' contentions. In an affidavit, Mr. Clemmons states that he "did not provide any address to defendant Duncan to send my legal materials out of the state [of] Kansas or to [my son]." See Rec. doc. 22, Ex. 2 p 13. He adds that the address to which his legal material was sent was not his son's address, that he was not able to contact any individuals at the Kansas City address, and that, as a result, he was never able to recover the legal material. See id. pp 13-16.
 
 
 10
 In granting summary judgment to the defendants, the district court noted that this circuit "has determined that restrictions on the amount of legal materials in a cell are reasonable and necessary for the safety, security, and orderly maintenance of a correctional facility." See Rec. doc. 24 at 2 (citing Green v. Johnson, 977 F.2d 1383, 1390 (10th Cir.1992)). The court also observed that because Mr. Clemmons had not challenged the sufficiency of legal resources available to him at the prison, he was required to demonstrate that an actual injury resulted from the seizure. As to this requirement, the court found Mr. Clemmons's allegation that eight of his pending cases were dismissed to be insufficient. "The fact that some of [Mr. Clemmons's] pending cases were dismissed after ... the June 1991 transfer must be viewed in light of plaintiff's demonstrated familiarity with filing pleadings in this court, which could include requests both for relief in those actions or for information regarding plaintiff's pending cases." Id. at 3.
 
 II. DISCUSSION
 
 11
 We review the district court's grant of summary judgment de novo, applying the same standard as did the district court under Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). We must view the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). Additionally, in cases involving litigants who proceed pro se, we must construe the pleadings liberally in their favor. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991).
 
 
 12
 On appeal, Mr. Clemmons renews his argument that the seizure of legal materials from his cell violated his right of access to the courts.[1] The Supreme Court has held that prisoners have a fundamental constitutional right to "adequate, effective, and meaningful" access to the courts. See Bounds v. Smith, 430 U.S. 817, 822 (1977). That right imposes affirmative obligations on corrections officials "to assure all inmates access to the courts and assistance in the preparation and filing of legal papers." Petrick v. Maynard, 11 F.3d 991, 994 (10th Cir.1993). Corrections officials are required to provide inmates with "adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. Moreover, "prison officials may not affirmatively hinder a prisoner's efforts to construct a nonfrivolous appeal or claim." Green, 977 F.2d at 1389. The constitutional right of access to the courts arises out of the Privileges and Immunities Clause of Article IV, the First Amendment right to petition the government for redress of grievances, and the Due Process Clause of the Fifth and of the Fourteenth Amendments. Smith v. Maschner, 899 F.2d 940, 947 (10th Cir.1990). The right is " 'basic to our system of government.' " Nordgren v. Milliken, 762 F.2d 851, 853 (10th Cir.) (quoting Ryland v. Shapiro, 708 F.2d 967, 971 (5th Cir.1983)), cert. denied, 474 U.S. 1032 (1985).
 
 
 13
 This circuit, along with a number of others, has concluded that, in certain circumstances, the seizure of a prisoner's legal materials may violate his right of access to the courts. See Green, 977 F.2d at 1389-90; see also Bryant v. Muth, 994 F.2d 1082, 1087 (4th Cir.), cert. denied, 114 S.Ct. 559 (1993); Crawford-El v. Britton, 951 F.2d 1314, 1317-19 (D.C.Cir.1991), cert. denied, 506 U.S. 818 (1992); Gregory v. Nunn, 895 F.2d 413, 414-15 (7th Cir.1990); Morello v. James, 810 F.2d 344, 347 (2d Cir.1987); Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir.1986); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir.1986). As the Second Circuit has observed, "Surely the state cannot satisfy this obligation by providing a prisoner access to the legal resources necessary to prepare his case and then depriving him of his pro se work product." Morello, 810 F.2d at 344.
 
 
 14
 Nevertheless, not every seizure of legal materials from a prisoner raises constitutional concerns. Corrections officials retain broad discretion in administering prisons, see Turner v. Safley, 482 U.S. 78, 84-85 (1987), and, as a result, we have concluded that a prison rule limiting the amount of legal material that a prisoner could retain in his cell was reasonable and necessary and did not violate the constitutional right of access to the courts, see Green, 977 F.2d at 1390. Additionally, the fact that the seized materials are eventually returned to the prisoner, that the materials are replaceable, that legal assistance is available to him, and that his pending cases have not been adversely affected may all indicate that a particular seizure does not constitute a constitutional violation. See, e.g., Bryant, 994 F.2d at 1087 (noting that the prisoner was not permanently deprived of his legal materials); Vigliotto v. Terry, 873 F.2d 1201, 1202 (9th Cir.1989) (finding no constitutional violation when "[a]t most, prison officials deprived [the prisoner] of his legal materials for three days"); Holloway v. Dobbs, 715 F.2d 390, 392 (8th Cir.1983) (per curiam) (finding no constitutional violation where "all of [the prisoner's] legal materials were located and ... he was given complete access to them"); see generally Peterkin v. Jeffes, 855 F.2d 1021, 1041 (3d Cir.1988) ("A court cannot make the assumption that any alleged administrative deficiency or less than optimal clerical arrangement actually impedes a prisoner's ability to file meaningful legal papers.").
 
 
 15
 Thus, in instances in which a prisoner alleges that the seizure of legal materials has deprived him of his constitutional right of access to the courts--but does not allege a complete denial of access to legal resources--he must establish that he has been prejudiced by the defendant's actions in order to prevail. See Green, 977 F.2d at 1390 (citing Twyman v. Crisp, 584 F.2d 352, 357 (10th Cir.1978)); see also Gentry v. Duckworth, 65 F.3d 555, 559 (7th Cir.1995); Chandler v. Baird, 926 F.2d 1057, 1062 (11th Cir.1991). In Gentry, the Seventh Circuit explained the required showing of prejudice as " 'some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation.' " Gentry, 65 F.3d at 558 (quoting Jenkins v. Lane, 977 F.2d 266, 268 (7th Cir.1992)). This definition of prejudice does not mean that the prisoner must show that, absent the actions of corrections officials, he would have prevailed in the underlying case. Id. at 559 (noting that the right of access is "at its base a right to be heard"). However, the prisoner's prosecution of the underlying action must be affirmatively hindered in some significant way; there must be "actual substantial prejudice to specific litigation." Id.; see also Martin v. Davis, 917 F.2d 336, 340 (7th Cir.1990) (giving as examples of prejudice "court dates missed" and "inability to make timely filings"), cert. denied, 501 U.S. 1208 (1991).
 
 
 16
 After reviewing the defendant's response brief, which we requested, and under our standard of review, we must conclude that the district court's grant of summary judgment to the defendants was not warranted. Most importantly, as noted above, Mr. Clemmons's affidavit states that he was permanently deprived of a substantial amount of legal materials needed for pending cases. According to Mr. Clemmons, the material included items not easily replaced by an indigent prisoner: "trial transcripts in State v. Clemmons, case No. 83 CR 1318 totalling six (6) volumes which will not fit into a box limited to 16"(L) X 12"(W) X 6"(D)." See Rec. doc. 22 at 2. Rather than disproving these allegations, the defendants acknowledge in the Martinez report that following the seizure of materials from Mr. Clemmons's cell, several of his pending cases were dismissed for lack of prosecution and, in several other cases, he was denied all requested relief. See Rec. doc. 20. One of the cases listed by the defendants is a petition for a writ of habeas corpus--a matter in which consideration of state trial transcripts is often necessary. See id. The permanent loss of a substantial quantity of legal material (including items such as trial transcripts) followed by the dismissal of Mr. Clemmons's pending cases permits the inference, especially on summary judgment, that the seizure " 'result[ed] in the interruption and/or delay of ... pending or contemplated litigation.' " See Gentry, 65 F.3d at 558 (quoting Jenkins, 977 F.2d at 268). Mr. Clemmons has thus presented some evidence to support his allegation that the seizure of material from his cell deprived him of his constitutional right of access to the courts.[2]
 
 
 17
 Additionally, although our decision in Green supports the issuance of a rule such as IMPP 012-120 that limits the amount of legal material that a prisoner may retain in his cell, we believe that the constitutional right of access to the courts does place certain limitations on the way in which such rules may be enforced. In the circumstances such as those before us, when substantial legal material that a prisoner has been allowed by the Department of Corrections to accumulate is suddenly removed from his cell, the right of access to the courts requires prisoner officials to take reasonable measures to ensure that the prisoner will have the opportunity to recover the removed material that is necessary to prosecute his claims. See Crawford-El, 951 F.2d at 1318 ("At a minimum, if [the defendant's] delivery of the boxes to [the plaintiff prisoner's brother-in-law] was a reasonable means of securing their safe transfer, it would not violate his Bounds right.").
 
 
 18
 It is possible that the defendants took such measures, but neither their brief nor our record gives us adequate legally admissible evidence in order to tell. In particular, we note that the evidence presented by the defendants in the Martinez report does not resolve several important factual matters. In particular, although Officer Duncan's affidavit states that he sent the subject legal materials to Mr. Clemmons's son at an address that Mr. Clemmons "had provided," see Rec. doc. 20, Ex B at p 7, the affidavit explains neither the context in which Mr. Clemmons provided this address nor whether, before mailing the materials, Officer Duncan or some other corrections official informed Mr. Clemmons where they would be sent or gave him the option of having the materials sent somewhere else. Because Mr. Clemmons denies that he requested Officer Duncan to send the legal materials to his son at the Kansas City address, there is a factual dispute as to whether the mailing of the materials to the Kansas City address constituted a reasonable means of affording Mr. Clemmons the opportunity to recover them if necessary. Cf. Crawford-El, 951 F.2d at 1318. That dispute precludes the granting of summary judgment to the defendants on the record.[3]
 
 
 19
 Finally, because the constitutional right of access to the courts and the principle that the seizure of legal materials from a prisoner may violate that right were clearly established in June 1991, the record also does not support the district court's conclusion that the defendants are entitled to qualified immunity. See Crawford-El, 951 F.2d at 1318 ("[I]t was clear by 1989 that an officer who interfered with the transmission of an inmate's legal papers for the purpose of thwarting the inmate's litigation violated his constitutional right of access to the courts." (emphasis added)). However, the defendants are not precluded from raising that defense in a subsequent summary judgment motion on further development of the record. See Dixon v. Richer, 922 F.2d 1456, 1463 (10th Cir.1991).[4]
 
 
 20
 Accordingly, for the reasons set forth above, we vacate the district court's grant of summary judgment to the defendants and remand the case for further proceedings consistent with this opinion.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [1]
 In summarizing the issues in his opening brief, Mr. Clemmons repeats the allegations of the complaint that the defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures and his rights under the Equal Protection Clause of the Fourteenth Amendment. However, throughout the brief, Mr. Clemmons focuses on the impact of the seizure on his various actions against prison officials and does not present arguments or case authority suggesting that the defendants violated his Fourth and Fourteenth Amendment rights other than by denying him access to the courts. Accordingly, we construe Mr. Clemmons's appeal as raising the single issue of whether the seizure of legal materials from his cell violated his constitutional right of access to the courts
 
 
 [2]
 We note that some courts have granted summary judgment to prison officials on right of access claims when prisoners have failed to specify the materials seized from them and have failed to explain why these materials were necessary to the prosecution of their claims. See, e.g., Hossman v. Spradlin, 812 F.2d 1019, 1022 (7th Cir.1987) ("Appellant, in opposition to defendant's motion for summary judgment, could and should have stated with specificity exactly what materials he was deprived of and how such deprivation resulted in his being denied the meaningful access to the courts to which he is entitled."). However, in this case, Mr. Clemmons's detailed listing of transcripts from a specific case and the undisputed fact that a number of Mr. Clemmons's pending cases were dismissed distinguishes from those decisions in which the plaintiff prisoners' failure to explain the need for particular legal materials warranted the granting of summary judgment to the defendant prison officials
 
 
 [3]
 In their appellate brief, the defendants also rely on a July 3, 1991 letter to Mr. Clemmons from Cheryl Allen, a staff attorney at Legal Services for Prisoners, Inc., in Hutchison, Kansas. The letter is attached to Mr. Clemmons's complaint
 In the letter, Ms. Allen states that she investigated the seizure of Mr. Clemmons's legal materials from his cell. Ms. Allen states:
 I talked to our Lansing office and was told that when you were transferred you were told to pick what legal material you wanted. You said you wanted it all or nothing. In response, the officers picked the legal material for you, fitting it into the required box size. The remainder was sent to an outside address.
 See Rec. doc. 2, Attach. 1; see also Aplees' Br. at 15.
 For several reasons, Ms. Allen's letter does not establish that the defendants are entitled to summary judgment. The statements in Ms. Allen's letter about what unnamed prison officials said to Mr. Clemmons and what he said to them are hearsay and therefore not properly considered by the court in ruling on a summary judgment motion. See Thomas v. International Business Machs., 48 F.3d 478, 485 (10th Cir.1995). Moreover, Ms. Allen's letter does not explain the mailing of Mr. Clemmons's legal materials to the Kansas City address.
 However, we also note that these statements by Mr. Clemmons, if established by admissible evidence, provide support for the defendants' contention that Officer Duncan's selection of legal materials to be removed from Mr. Clemmons's cell did not violate his right of access to the courts.
 
 
 [4]
 We further note that if the defendants were merely negligent in sending the materials to the Kansas City address then Mr. Clemmons cannot prevail on his Bounds right of access claim. See Crawford-El, 951 F.2d at 1318-19. In order to be liable on a Bounds claim based on the seizure of a prisoner's legal materials, an officer must have "diverted the property with the purpose of interfering with his litigation, or at least with deliberate indifference to such interference." Crawford-El, 951 F.2d at 1318. However, for the reasons set forth above, the record before us is not sufficient to determine whether the mailing of the materials to the Kansas City address was reasonable under the circumstances, merely negligent, or done to interfere with Mr. Clemmons's litigation or with deliberate indifference to such interference